1  Michael S. Biggs, Esq. SBN: 237640
2  BIGGS LAW PC
   Post Office Box 454
3  Petaluma, CA 94953-0454

4  (707) 763-8000 Telephone
5  (707) 763-8010 Facsimile

6  Attorney for Plaintiff
7  TROY COLLIER

RECEIVED

2008 MAY 21  P 5: 56

RICHARD W. WIEKING, CLERK
U.S. DISTRICT COURT
NO. DIST. OF CA.

# ORIGINAL

## IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

12  Troy Collier
    PLAINTIFF

13

14            v.

15  Windsor Fire Protection District
16  Board of Directors, In Its Official
    Capacity,  Fire Chief Ronald
17  Collier in his Official Capacity,
18  Battalion Chief Matt
    Gustafson, In his Official and
19  Individual Capacity, Battalion
    Chief Joe Giordani
20  In his Official and Individual
21  Capacity, William J. Arnone
    In his Official and Individual
22  Capacity

23  And DOES 1-25

24
    DEFENDANTS
25

Case No.:

COMPLAINT FOR DAMAGES
DEMAND FOR JURY TRIAL

First Cause of Action
Violation of Procedural Due Process
42 U.S.C. § 1983

Second  Cause of Action
Violation of Substantive Due Process
42 U.S.C. § 1983

Third  Cause of Action
Violation of California Constitution
ART. 1. § 7 (DUE PROCESS)

Fourth  Cause of Action
Violation 42 U.S.C. § 1985
Conspiracy to Violate Civil Rights

Fifth Cause of Action
Violation of First Amendment
42 U.S.C. § 1983

Sixth Cause of Action
Violation of California Constitution
ART. 1. § 2 (FREE SPEECH)

Seventh Cause of Action
Violation of California Constitution
ART. 1. § 1 (PRIVACY)

Eighth Cause of Action
Conspiracy

Ninth Cause of Action
Deprivation of Liberty Without
Due Process of Law
42 U.S.C. § 1983

Tenth Cause of Action
Wrongful Termination in Violation
of Public Policy

Eleventh Cause of Action
Intentional Inflection of Emotional Distress

Twelfth Cause of Action
Wrongful Termination Breach of
Employment Agreement (MOU)

Thirteenth Cause of Action
Breach of the Implied Covenant of Good faith
and Fair Dealing

## **INTRODUCTION**

1.        Troy Collier formally a Captain with the Windsor Fire Protection District was

unjustly and without cause suddenly terminated  from employment after 24 years of  exemplary

service on the basis of an off duty physical altercation  initiated by fellow Captain Ron Busch

after Bush thought that Collier "touched' his wife while sitting next to her in the back seat in a

cram- packed limousine with upwards of thirteen drunk revelers, after  having left the Windsor

Volunteer Firefighters Association awards dinner and social event at Charlie's Restaurant in

Windsor which had come to an end, after a dinner and an afternoon and night of ongoing heavy

drinking.  The "partiers" were on their way to a bar to have even more drinks while in the

limousine with an open wet bar, occupied by firemen and their wives and girlfriends when the

altercation broke out. The altercation was relatively minor as Busch and Troy grappled first in

the limousine and then spilled out into a bank parking lot in Windsor. A sheriff car abruptly

pulled up and Busch and his wife hurriedly got back in the limousine and speed away leaving

Troy and his wife and several others drunk and stranded in the parking lot at near midnight on a

Saturday night fortunately the Sheriff's deputy gave them all a ride home.

2.       Captain Collier was employed by the Windsor Fire Protection District pursuant to a

contract known as the Memorandum of Understanding that provides for termination only for a

showing of cause.

**Circumstances of Captain Colliers Termination**

**Notice of Intended Discipline:**

3.       Subsequently and surprisingly Troy was given a 'Notice of Intended Discipline in part

charging Captain Collier with a violation of paragraph VI. D. 1 of the District's Standards of

Conduct by engaging in a fistfight at the Exchange Bank Parking lot.

4.       VI. D 1 Standards of Conduct contains the terms "workplace Violence" and the text

provides in relevant part that the District is committed to …providing a safe violence-free

workplace. The policy prohibits anyone on district premises or engaging in a district related

activity from behaving in a violent or threatening manner".

5.       Captain Collier's Notice of Intended Discipline goes on to ad that the intended

discipline is based upon evidence of an inappropriate touching of Donna Busch by Captain

Collier which escalated into a fistfight…. The Notice cites SOG #A-3 as a supplemental basis for

the intend ed discipline. The Notice states, "….employees shall adhere to the highest standards

of conduct," including "Any comment or action which a reasonable person would find

offensive".

6.       The United States Constitution applies to the case at hand because public

1   employment is considered a property right implicating standards of due process when

2   termination is an issue, such as is the instant case at hand.

3   7.        The Windsor Fire Protection District Standards of Conduct VI., are Unconstitutionally

4   Vague in Violation of Due process Because District Related Activities as applied in the

5   Standards of Conduct entail "subjective" determination leaving danger of arbitrary and abuse of

6

7   power nor is which has led to arbitrary and capricious disciplinary action and subsequent

8   termination imposed upon Captain Troy Collier.

9

10  8.        In <u>Connaly</u> the United States Supreme Court held; "It is a well settled principle of

11  constitutional law "that a statute which either forbids or requires the doing of an act in terms so

12  vague that men of common intelligence must necessarily guess at its meaning and differ as to its

13  application, violates the first essential of due process of law." <u>Connaly</u> v. <u>General   Construction</u>

14  <u>Co.</u> (1926) 269 385.

15

16  9.        Here on the basis of WFPD printed policies, "a physical altercation out of view of the

17  general public, between two co-workers, which occurred late at night, off duty, after the Windsor

18  Volunteer Firefighters Association awards dinner and social event concluded, on the way to a

19  bar, for more drinking in a limousine with an open wet bar, occupied by firemen and their wives

20  and girlfriends, after a dinner and an afternoon and night of ongoing heavy drinking, was not a

21

22  district related activity and not workplace violence.

23  10.       Section VI, is unconstitutional vague and not enforceable on the facts as presented.

24  11.        Consequently, termination of Captain Collier on grounds of Section VI. rises to a

25  violation of his rights as guaranteed by the 14th, Amendment to the United States Constitution.

26

27  12.       To be terminated for off duty behavior such as the facts at hand also invokes Captain

28  Colliers First Amendment "Rights of Association".

**Notice of Termination:**

13.     After Collier had his Skelly hearing he was terminated and he and his family shortly thereafter stripped of health care insurance. The termination notice did not recount the reasons set forth in the Notice of Discipline, it adds a reason for termination which was not set out in the preliminary notice. Battalion Chief Gustafson prepared the notice of termination which said "…and my familiarly with your past performance relating to people skills. Captain Collier was not given notice and opportunity to respond to the claims in the Notice of Termination that his "…past performance problems relating to people skills" was a reason for his termination".

14.     The Notice of Intended Discipline did not apprise Captain Collier that he was to be disciplined for reasons other than the events of February 24, 2007. The Notice was inadequate because Collier had no opportunity in his "Skelly" hearing to address that issue. Captain Collier's rights to due process therefore were violated.

**Captain Colliers Union Activities:**

15.     During the period of February through June or July, 2004, the Windsor Professional Firefighters Association/IAFF Union Local 4407 (WPFA) participated in contract negotiations with the Windsor Fire Protection District (WFPD).

16.     Captain Troy Collier was a member of the WPFA's negotiation committee as a lead negotiator. On or about June or July, 2004, the WFPD Board of Directors, after consultation with and advisement by the WFPD attorney, Mr. Arnone, notified the WPFA that they were unwilling to continue negotiations, and were going to implement their last, best and final offer by unilaterally adopting a Memorandum of Understanding via a WFPD Resolution. An impasse had not been declared by either side.

17.       Subsequent to the declaration noted above, the WPFA officially requested on numerous occasions that the WFPD re-open negotiations to continue towards a mutual ratification of the contract by both parties.

18.       The WFPD denied the request and unilaterally implemented a new Memorandum of Understanding between the WFPD and the WPFA, without the approval of the WPFA.

19.       Subsequent to the WFPD's continued refusal to re-open and continue negotiations, the WPFA filed an unfair practice claim with the Public Employment Relations Board (PERB), accusing the WFPD of violating the Meyers-Milias-Brown Act, Section 3505 (failure to negotiate in good faith), and MMBA Section 3505.4 (unilateral implementation of a Memorandum of Understanding).

20.       Captain Troy Collier, as the Secretary/Treasurer of the WPFA, was responsible for gathering information and preparing the documentation required to file the complaint with PERB.  The documentation was prepared in its entirety by Captain Collier and signed by Ron Busch, the WPFA president. Mr. Arnone advised WFPD that WFPD could unilaterally adopt the MOU.

21.       After reviewing the complaint, PERB accepted the claim and set a hearing date for the WFPD to answer the complaint.  Just prior to the date of the hearing, the WFPD agreed to rescind the unilaterally adopted Memorandum of Understanding, and re-open negotiations.

22.       Based on the action noted immediately above, the WPFA withdrew their complaint from PERB, and negotiations continued until an agreement was reached by both the WFPD and the WPFA.

23.       Mr. Bill Arnone, the WFPD' attorney, was a member of the WFPD's negotiation committee (Management). In spite of the conflict between the WFPD and WPFA involving

Arnone and Captain Collier as described above, Arnone was charged with responsibility for investigating Captain Collier surrounding the events of February 24, 2007.

24.        Subsequent to the adverse relationship with the WFPA, Arnone represented the WFPD in Captain Collier's Skelly hearing. Arnone also represented WFPD in Colliers appeal to the WFPD Board of Directors, and Arnone also represented WFPD in the subsequent two day non-binding arbitration, where the arbitrator advised Collier termination could not be sustained.

**Termination of Captain Troy Collier is was a  Severe Form of Discipline Not Warranted by The Facts.**

25.        "Mere finding that off duty act by state employee, coupled with determination that act falls under definition of failure of good behavior, is not sufficient basis for termination of employment; it must be shown that misconduct bears some rational relationship to employment and must be of such character that it can easily result in impairment or disruption of public service. Cal.Gov.Code § 19572(t)".

26.        Here it can hardly be said that the drinking event and physical altercation inside the limo on the way to a bar for more drinking, bears some rational relationship to employment and must be of such character that it can easily result in impairment or disruption of public service.

27.        By contrast whatever Captain Collier "may" have done wrong if anything at all or beyond petty and minor does not even remotely rise to the level of termination.

28.        Collier was unjustly terminated. Collier and his family have sustained massive economic damage. His income was abruptly cut off as well as his family's medical insurance. Collier and his family were shamed and humiliated. In violation of his privacy rights as guaranteed by the California Constitution, Collier was made a spectacle out of shortly after his (Skelly) pre-

termination hearing. WFPD attorney William J. Arnone gave a press release published on the local newspapers web-site and followed up on in the news print media revealing contends of Colliers personal file and suggesting that Collier had a "violence" problem.

29.       Ron Busch was not terminated but only lightly disciplined with a few days off from work and currently enjoys employment as a Captain of firefighters at the Windsor Fire Protection District (hereinafter WFPD).  Captain. Collier was railroaded.

## JURISDICTIONAL FACTS

30.       Jurisdiction is conferred on this Court pursuant to 28 U.S.C. §§ 1331 and 1343(3) which confer original jurisdiction to the District Courts of the United States for all civil actions arising under the United States Constitution or the laws of the United States, as well as civil actions to redress deprivation under color of state law, of any right immunity or privilege secured by the United States Constitution. Plaintiffs also invoke the supplemental jurisdiction of this Court to consider claims arising under the laws of the State of California pursuant to 28 U.S.C. § 1367(a).

31.       The acts, events, or omissions giving rise to the claims set forth herein occurred in the Northern District of California. Defendants named herein reside within the Northern District of California. Venue is proper in the Northern District of California pursuant to 28 U.S.C. § 1391(b).

32.       This action is brought pursuant to 42 U.S.C. § 1983 to redress the deprivation under color of state and/or local law of rights, privileges, immunities, liberty and property, secured to Plaintiffs by the First and Fourteenth Amendments to the United States Constitution, without due process of law. This action seeks monetary damages and such other statutes and regulations as may apply to the facts.

33.       At all times herein mentioned Defendants, and each of them, acted under color of the

laws of the State of California.

34.    At all times herein mentioned Defendants, and each of them, separately and in concert, conspired to commit and engaged in the illegal conduct herein described, depriving Plaintiff of rights, privileges, immunities, property and liberty secured to him by the First and Fourteenth Amendments to the United States Constitution, the Laws of the United States, and the Laws of the State of California.

35.    Defendant, WINDSOR FIRE PROTECTION DISTRCIT (hereinafter "WFPD"), is a public entity organized, existing, and incorporated under the Laws of the State of California. WFPD is a "person" per the provisions of 42 U.S.C. § 1983, as the injuries and deprivations alleged herein resulted from the official customs, policies, and practices of the WFPD, or were ratified, approved, condoned, or undertaken by policy making officials of the WFPD.

## FIRST CAUSE OF ACTION FOR VIOLATION OF PROCEDURAL DUE PROCESS 42 U.S.C. § 1983

36.    Plaintiff fully incorporates herein by reference Paragraphs 1 through 35 of the Complaint.

37.    All of the acts by Defendants alleged herein were done to punish Plaintiff, for his protected speech and associational activities.

38.    By adding issues after his Skelly hearing not recounted in the Notice of Termination, Captain Collier was denied proper opportunity to be heard before his termination, denying him exculpatory evidence, and denying him any opportunity to appeal to properly appeal his termination, Defendants have deprived Collier of his procedural due process rights.

39.    By not affording Collier the proper opportunity to be heard before being placed on

administrative leave and by denying him any opportunity to appeal the decision, Defendants

have deprived Collier of his procedural and substantive due process rights.

40.    By not affording Collier the proper opportunity to be heard before making punitive

changes to the terms and conditions of employment and taking adverse employment actions

against him, Defendants have deprived Plaintiff Collier of procedural and substantive due

process rights.

41.    The acts done by Defendants constitute a calculated and continuous course of conduct

which violated Plaintiffs' rights to exercise and Free Association as guaranteed to him by the

First and Fourteenth Amendments to the Constitution of the United States and the California

Constitution.

42.    Defendants acted in concert and without authorization of law, willfully, knowingly, and

purposely, with the specific intent of depriving Plaintiff Collier of his First Amendment rights.

43.    In so doing all the acts described and alleged herein, Defendants, and each of them, were

acting under the color of state law and acted to deprive Plaintiff of his rights to due process of

law.    At the time Defendants took these actions. Defendants knew or, reasonably should have

known that their conduct would violate Plaintiffs' clearly established rights.

44.    As a result of the foregoing acts committed against Collier by Defendants, Collier has

sustained injuries to his reputations, humiliation, and embarrassment, as well as severe mental

anguish and foregone past and future earnings and benefits, to which he would have been

otherwise entitled, and other economic loss.

45.    Defendants knew, or should have known, that their actions deprived Plaintiffs of his First

and Fourteenth  Amendment rights and rights to due process, and therefore are personally liable

under 42 U.S.C. § 1983.

46.     Defendants' actions depriving Plaintiff of his First and Fourteenth Amendment Rights resulted from the long standing policies or customs of WFPD, and/or were undertaken, directed or ratified by policy making officials of the WFPD, so as to render the WFPD liable as a "person" acting under the color of law pursuant to 42 U.S.C. § 1983.

47.     As a direct and proximate cause of the acts of the Defendants, and each of them, Plaintiff has been seriously and irreversibly damaged in an amount according to proof at trial.

WHEREFORE, Plaintiff prays judgment against Defendants and each of them, as set forth herein below.

## SECOND CAUSE OF ACTION FOR VIOLATION OF SUBSTANTIVE DUE PROCESS 42 U.S.C. § 1983

48.     Plaintiff fully incorporates herein by reference Paragraphs 1 through 47 of the Complaint.

49.     All of the acts by Defendants alleged herein were done to punish Plaintiff for his protected speech and associational activities.

50.     Plaintiff Collier had a protected property interest in his civil service employment with the WFPD. In terminating his employment, Defendants completely disregarded and deprived Collier of his fundamental rights to due process which are protected by the First, Fifth and Fourteenth Amendments to the United States Constitution and the Constitution of the State of California.

51.     In so doing all the acts described and alleged herein, Defendants, and each of them, were acting under the color of state law and acted to deprive Plaintiff of his rights to due process of law. At the time Defendants took these actions. Defendants knew or, reasonably should have known that their conduct would violate Plaintiffs' clearly established rights.

52.     Each of the actions taken by the Defendants, and each of them, was taken with deliberate indifference and reckless and gross disregard of the rights of the Plaintiff and with malice and ill will, for which punitive damages are sought against each Defendant, with the exception of the WFPD to the extent it is immune.

53.     As a direct and proximate cause of the acts and omissions of the Defendants, Plaintiff has been damaged in an amount according to proof at trial.

WHEREFORE, Plaintiff prays judgment against Defendants and each of them, as set forth herein below.

### THIRD CAUSE OF ACTION FOR VIOLATION OF CALIFORNIA CONSTITUTION ART. I. §7 (DUE PROCESS)

54.     Plaintiff fully incorporates herein by reference Paragraphs 1 through 53 of the Complaint.

55.     Plaintiff Collier has a protected property interest in his civil service employment with the WFPD, By terminating Collier, Defendants have deprived him of his rights protected by <u>Article I, § 7 of the California Constitution</u>.

56.     In so doing all the acts described and alleged herein, Defendants, and each of them, were acting under the color of state law and acted to deprive Collier of due process of law. At the time Defendants took these actions, Defendants knew or should have known that their conduct would violate Colliers's clearly established rights.

57.     Each of the actions taken by Defendants, and each of them, was taken with ill will, malice and gross and reckless disregard of the rights of Plaintiff for which punitive damages are sought against all Defendants with the exception of the WFPD to the extent it is immune.

58.     As a direct and proximate cause of the acts defendants, and each of them, Plaintiff Collier

have been damaged in an amount according to proof at trial.

WHEREFORE, Plaintiff prays judgment against Defendants and each of them, as set

forth herein below.

### FOURTH CAUSE OF ACTION FOR VIOLATION OF
### 42 U.S.C. § 1985 CONSPIRACY TO VIOLATE CIVIL RIGHTS
### (Against -Arnone, Giordani, Gustafson)

59.    Plaintiff fully incorporates herein by reference Paragraphs 1 through 58 of the

Complaint.

60.    Defendants, Gustafson, Giordani and Arnone used the February 24, 2007 incident as

pretext to railroad Collier out of the fire department.

61.    Arnone controlled what was supposed to be an objective investigation conducted by a fire

department outsider Gary Barner, of whom at one point Arnone described "as his employee".

62.    Giordani and Gustafson who sat together "as a team" in judgment at Colliers Skelly

hearing blocked and frustrated Colliers due process rights by overtly refusing to provide the full

investigative report prepared by Barner that they were relying on, and failing to fully disclose

information they would use as a basis for the termination, and otherwise used the "minor

February 27 incident" to deprive Collier of the liberty interest in his continued employment as a

"for cause" employee subject to the  Memorandum of Understanding.

63.    Consequently as a result of the overt acts committed by Arnone, Giordani, and Gustafson,

Plaintiff suffered injuries to his reputation, humiliation, embarrassment, severe mental anguish in

an amount of damages to be proven at trial, including past and future earnings and benefits.

WHEREFORE, Plaintiff prays judgment against Defendants and each of them, as set

forth herein below.

## FIFTH CAUSE OF ACTION FOR VIOLATION OF FIRST AMENDMENT
## 42 U.S.C. § 1983

64.    Plaintiff fully incorporates herein by reference Paragraphs 1 through 63 of the Complaint.

65.    All of the acts by Defendants alleged herein were done to punish Plaintiff members for his protected speech and associational activities.

66.    In doing all the acts described and alleged herein, Defendants, and each of them, have deprived Plaintiff of his rights protected by the First and Fourteenth Amendments to the United States Constitution.

67.    Defendants acted under the color of state law to deprive Plaintiff of his clearly established rights, privileges and immunities. Defendants knew or should have known that their conduct would violate these rights, privileges and immunities.

68.    In so doing all the acts described and alleged herein, Defendants, and each of them, were acting under the color of state law and acted to deprive Plaintiff of his rights to due process of law.  At the time Defendants took these actions. Defendants knew or, reasonably should have known that their conduct would violate Plaintiffs' clearly established rights.

69.    Defendants acted with ill will, bad feelings, malice, and reckless and gross disregard of the rights of Plaintiff, entitling Plaintiff to punitive damages against each said Defendants, except the WFPD to the extent it is legally immune therefrom.

70.    As a direct and proximate cause of the acts of Defendants, and each of them, Plaintiff has been damaged in an amount according to proof at trial.

WHEREFORE, Plaintiff prays judgment against Defendants and each of them, as set forth herein below.

**SIXTH CAUSE OF ACTION FOR VIOLATION OF CALIFORNIA CONSTITUTION**
**ART. I. § 2 (FREE SPEECH)**

71.    Plaintiff fully incorporates herein by reference Paragraphs 1 through 70 of the

Complaint.

72.    All of the acts by Defendants alleged herein were done to punish Plaintiff for his

protected speech and associational activities.

73.    Defendants' acts and omissions, including the wrongful punitive measures, were

undertaken to prevent Plaintiff from exercising his right to free speech by retaliating,

humiliating, creating a hostile work environment, threatening, taking punitive employment

action, including suspensions and terminations, violated the Free Speech Rights protected by

Article 1, Section 2 of the California Constitution.

74.    The foregoing acts and omissions were undertaken with the approval and ratification of

each of the Defendants.

75.    In so doing all the acts described and alleged herein, Defendants, and each of them, were

acting under the color of state law and acted to deprive Plaintiff of his clearly established rights,

privileges and immunities. Defendants knew or should have known that their conduct would

violate these rights, privileges and immunities.

76.    Each of the actions taken by Defendants, and each of them, was undertaken with ill will,

malice, and done in reckless and gross disregard of Plaintiff's rights, such that an award of

punitive damages is merited against each of the Defendants, excepting the WFPD to the extent it

is legally immune.

77.    As a direct, foreseeable, and proximate result of the foregoing, Plaintiff has suffered and

continues to suffer losses and damages, the precise amount of which will be proven at trial.

78.     These damages are claimed together with prejudgment interest pursuant to

California Civil Code section 3287 and pursuant to any other provision of law providing for

prejudgment interest.

        WHEREFORE, Plaintiff prays judgment against Defendants and each of them, as set

forth herein below.

## SEVENTH CAUSE OF ACTION FOR VIOLATION OF
## CALIFORNIA CONSTITUTION ART. I. § 1 (PRIVACY)

79.     Plaintiff fully incorporates herein by reference Paragraphs 1 through 78 of the

Complaint.

80.     The unlawful and irresponsible publication of false information which Defendants caused

to occur constitutes a serious and unjustifiable intrusion into Collier's privacy interests.

81.     Defendants were aware of the falsity of the statements or acted with a reckless disregard

for the truth of their statements.

82.     Persons hearing the statements attributed them to be truthful.

83.     The false statements by Defendants caused damage to the reputation of Troy Collier and

his family.

84.     As a direct and proximate cause, Plaintiff has suffered damages in an amount according

to proof at the time of trial.

        WHEREFORE, Plaintiff prays judgment against Defendants and each of them, as set

forth herein below.

## NINTH CAUSE OF ACTION CONSPIRACY
### (Against -Arnone, Giordani, Gustafson)

85.     Plaintiff fully incorporates herein by reference Paragraphs 1 through 84 of the

Complaint.

86.     The violation of Plaintiff's rights as described herein, and all of them, was accomplished

by a concerted effort on the part of all the Defendants to commit the unlawful acts and to cause

harm to the Plaintiff.

87.     As a direct, foreseeable, and proximate result, Collier has and continues to suffer losses

in earnings, bonuses, and job benefits, and expenses incurred in the search for comparable

employment, in an amount which will be proven at trial. Plaintiff claims this amount together

with prejudgment interest pursuant to California Civil Code section 3287 and pursuant to any

other provision of law providing for prejudgment interest.

88.     As a direct, foreseeable, and proximate result, Plaintiffs has suffered extreme and severe

anguish, humiliation, mental, and emotional distress, nervousness, tension, anxiety, and

depression, to an extent and amount of damages to be proven at the time of trial. Plaintiff claims

this amount, together with prejudgment interest pursuant to California Civil Code section 3287

and pursuant to any other provision of law providing for prejudgment interest.

89.     By doing the acts alleged herein, Defendants acted in concert, in furtherance of a tacit,

express and implied agreement, to silence Plaintiff, stigmatize his reputation in the community

and within their chosen profession, deny Collier the benefits and emoluments of his  property

rights and liberty interests in his employment, chill his protected speech and associational

activities and, to otherwise deprive Plaintiff of his constitutionally protected civil rights provided

by the California and United States Constitutions and Statutes, California Government Code.

90.     Defendants did in fact deprive Plaintiff of his civil rights as set forth herein as a result of

1    a conspiracy among themselves to do so.

2    91.    As a direct and proximate result of Defendants' actions, Plaintiff has suffered, and will

3    continue to suffer, physical injuries, pain and suffering, mental anguish, emotional distress, and

4    economic damages. Plaintiff is thereby entitled to general, compensatory and punitive damages

5    in amounts to be proven at trial.

6

7    92.    Defendants acted in deliberate, cold, callous, malicious, oppressive, and in an intentional

8    manner to injure and damage Plaintiff, such that an award of punitive damages is proper.

9          WHEREFORE, Plaintiff prays judgment against Defendants and each of them, as set

10   forth herein below.

11

12   **NINTH CAUSE OF ACTION - DEPRIVATION OF LIBERTY WITHOUT DUE
     PROCESS OF LAW 42 U.S.C. § 1983**

13

14   93.    Plaintiff fully incorporates herein by reference Paragraphs 1 through 92 of the

15   Complaint.

16   94.    Plaintiff Collier has a protected liberty interest in seeking employment in his profession

17   as a professional firefighter.

18

19   95.    By doing the things alleged herein to have been done, Defendants, through a continuing

20   course of conduct, caused a deprivation of Collier's liberty interest in seeking employment in the

21   firefighter profession, without affording Collier due process of law. Said acts and omission

22   violated Colliers's rights secured by the Fourteenth Amendment to the Constitution of the United

23   States, the Laws of the State of California, the Rules, Policies and Ordinances of the WFPD and

24   the Memoranda of Understanding between the WFPD and the WINDSOR  PROFESSIONAL

25

26   FIREFIGHTERS ASSOCIATION (hereinafter WPFA), in violation of 42 U.S.C. § 1983.

27   96.    The acts of Defendants did, in fact, create a deprivation of these rights to a liberty

28

interest.

97.    As a direct and proximate result, Plaintiff suffered injuries to his reputation, humiliation,

embarrassment, severe mental anguish in an amount of damages to be proven at trial, including

past and future earnings and benefits.

98.    Defendants knew, or should have known, that their actions deprived Plaintiff of his

liberty interests without due process of law.

99.    Defendants' actions were undertaken pursuant to the official policies and customs of the

WFPD, and were directed and ratified by policy making officials of the WFPD, so as to render

the WFPD liable as a "person" acting color of law under 42 U.S.C. § 1983.

WHEREFORE, Plaintiff prays judgment against Defendants and each of them, as set

forth herein below.

**TENTH CAUSE OF ACTION FOR WRONGFUL TERMINATION IN VIOLATION OF
PUBLIC POLICY BY PLAINTIFF**

100.    Plaintiff fully incorporates herein by reference Paragraphs 1 through 99 of the

Complaint.

101.    Because the defendants violated constitutional and statutory authority, the public policy

tort applies. Gantt v. Sentry Ins. (1992) 1 Cal.4th 1083, 1095, 4 Cal.Rptr.2d 874; Rojo v. Kliger

(1990) 52 Cal.3d 65, 89-90, 276 Cal.Rptr. 130. There is no requirement to pursue administrative

remedies before pursuing a public policy violation claim. Liebert v. Transworld Sys. Inc. (1995)

Cal.App.4th 1693, 1704-06, 39 Cal.Rptr.2d 65; Rojo v. Kliger, supra at 1088.

102.    As a direct and legal result of the improper conduct of Defendants and each of them

plaintiff was injured. Plaintiff suffered lost earnings and earnings capacities, lost promotional

opportunities and other benefits of employment. Plaintiff suffered from and will in the future

suffer from humiliation, fear, shock, suffering and chagrin. Plaintiff may in the future require

medical, psychological, psychiatric and/or hospital care and treatment incurring bills for said

treatment. Plaintiff incurred and/or will incur attorneys' fees, litigation costs and lost interest.

103.    Thus, plaintiff seeks reimbursement for these damages, in a sum according to proof at

time of trial and in excess of the minimum jurisdiction of this court.

        WHEREFORE, Plaintiff prays judgment against Defendants and each of them, as set

forth herein below.


### ELEVENTH CAUSE OF ACTION INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

104.    Plaintiff fully incorporates herein by reference Paragraphs 1 through 103 of the

Complaint.

105.    By doing the things alleged herein to have been done, Defendants, and each of them,

acted with the intent to, and did, cause Plaintiff severe emotional distress. The conduct of

Defendants in so doing was extreme and outrageous and not tolerable by persons in a reasonable

society.

106.    As a direct and proximate result of Defendants' actions, Plaintiff has suffered, and will

continue to suffer, severe emotional distress, physical injuries, pain and suffering, and economic

loss.

107.    Plaintiff is thereby entitled to general, compensatory and punitive damages in amounts to

be proven at trial.

        WHEREFORE, Plaintiff prays judgment against Defendants and each of them, as set

forth herein below.

## TWELFTH CAUSE OF ACTION BY PLAINTIFF AGAINST ALL FOR WRONGFUL TERMINATION BREACH OF EMPLOYMENT AGREEMENT (MOU)

107.    Plaintiff fully incorporates herein by reference Paragraphs 1 through 107 of the Complaint.

108.    Defendant entered into an employment agreement with plaintiff, expressly and impliedly stating that plaintiff would only be discharged for good cause.

109.    Defendant breached that employment agreement.

110.    In October 2005, Plaintiff, and Defendant WDPD and Does 1 - 25 entered into an employment relationship via a Memorandum of Under Standing.

111.    Defendant made an express promise through a Memorandum of Understanding and by words and conduct to discharge plaintiff Collier only for good cause.

112.    Collier substantially performed his job duties except where such performance was excused or prevented.

113.    Defendant discharged Plaintiff Collier without good cause.

114.    Defendants conduct was a failure to act fairly and in good faith.

115.    Plaintiff was harmed by the discharge.

116.    Moreover, to the extent there was not an express agreement not to discharge Plaintiff except for good cause, Defendant by its words and conduct made it reasonable for Collier to believe that he would only be discharged for good cause. This was based on the express written contracts of employment Defendants entered into with Plaintiff, the personnel policies and practices of WFPD, the length of service for which Plaintiff was to be employed, raises, commendations, positive evaluations of plaintiff, and assurances by Defendant WFPD, its agents and managerial level employees, to assure Plaintiff of continued employment.

117.    There was not good cause to discharge plaintiff.  Plaintiff did not engage in misconduct, and Defendant has failed to produce any investigation giving it reasonable grounds to believe the Plaintiff engaged in any misconduct.  Defendant failed to follow due process requirements

118.    Plaintiff has suffered damages as a result of the conduct of Defendants, including loss of income and benefits and pay increases as specified in the agreement. Plaintiff further lost the present cash value of future wages and benefits he would have earned in the future under the agreement with the WFPD that was reasonably certain to continue.

119.    Plaintiff was employed under an employment agreement. Plaintiff and Defendants entered into this agreement voluntarily and knowingly. Plaintiff performed all job duties except for those where performance was excused or prevented. Defendant breached the employment contract by discharging Plaintiff before the end of the term of the contract and Plaintiff was harmed by that discharge as alleged herein above.

120.    Plaintiff further had an option to extend the term of his employment contract. Plaintiff would have exercised that term but for Defendants' breach of his contract and therefore, Plaintiff seeks all damages for this extended term of contract as well.

121.    Wherefore,  Plaintiff has incurred general and special damages, attorneys fees, litigation costs and may incur in the future additional damages including without limitation lost earnings, lost benefits of employment, lost promotional opportunities and raises, medical, nursing, hospital, surgical, psychological and/or psychiatric care and treatment. Plaintiff further suffered with such other damages as will be proven at time of trial, in excess of the minimum jurisdiction of this court.

122.    Plaintiff was to receive the equivalent of $103,000 per year, for the 2007-2008 fiscal year and adjusted upwards thereafter.

123.    In addition, Plaintiff was to receive retirement benefits, insurance benefits, medical, life and death benefits, dental benefits and Blue Shield . Plaintiff was further offered as part of his contract of employment sick leave, vacation leave, and other benefits which Defendants have wrongfully taken from him in breach of his contract.

WHEREFORE, Plaintiff prays judgment against Defendants and each of them, as set forth herein below.

## THIRTEENTH CAUSE OF ACTION BREACH OF THE IMPLIED COVENANT OF GOOD FAITH & FAIR DEALING

123.    Plaintiff fully incorporates herein by reference Paragraphs 1 through 123 of the Complaint.

124.    Plaintiff repeats and realleges paragraphs 1 through 48 as though fully set out herein.

125.    Plaintiff and Defendant entered into an employment relationship.

126.    Plaintiff substantially performed his job duties unless that performance was excused or prevented.

127.    Defendant prevented plaintiff from receiving the benefits that he was entitled to have under the contract.

128.    Defendant's conduct was a failure to act fairly and in good faith; and

129.    Plaintiff was harmed by Defendants' conduct, incurring general and special damages, attorneys fees, litigation costs and may incur in the future additional damages including without limitation lost earnings, lost benefits of employment, lost promotional opportunities and raises, medical, nursing, hospital, surgical, psychological and/or psychiatric care and treatment.

**WHEREFORE, Plaintiff prays judgment against Defendants, and each of them, as follows:**

1. For all compensatory and money damages in an amount to fully compensate Plaintiff according to proof;

2. For punitive and exemplary damages, as appropriate, according to proof;

3. For attorney fees and costs, as appropriate, according to proof;

4. For incidental and/or consequential damages, if any, according to proof;

5. For all interest, including prejudgment and post judgment interest;

6. For all applicable statutory damages, if any;

7. For all applicable special damages, if any;

9. For all applicable general damages, including emotional and mental distress;

10. For such other and further relief as the Court deems just and equitable.


**DATED:  MAY 21, 2008**                                     **BIGGS LAW PC**




                                             Michael S. Biggs, Attorney for
                                             Plaintiff Troy Collier

---

*Collier v. Windsor Fire Protection District*                              *Complaint for Damages*