**WILLIAM J. GORHAM III, SB No. 151773**
**MAYALL, HURLEY, KNUTSEN, SMITH & GREEN**
A Professional Corporation
2453 Grand Canal Boulevard, Second Floor
Stockton, California 95207-8253
Telephone: (209) 477-3833
Facsimile: (209) 473-4818
Email: wgorham@mayallaw.com

Attorneys for Defendants,
Windsor Fire Protection District Board of Directors; Ronald Collier;
Matt Gustafson; Joe Giordani

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **TROY COLLIER**<br><br>        **Plaintiff,**<br><br>vs.<br><br>**WINDSOR FIRE PROTECTION DISTRICT BOARD OF DIRECTORS, IN ITS OFFICIAL CAPACITY; CHIEF OF THE WFPD RONALD COLLIER, IN HIS OFFICIAL CAPACITY; BATALLION CHIEF MATT GUSTAFSON, IN HIS OFFICIAL AND INDIVIDUAL CAPACITY; BATTALION CHIEF JOE GIORDANI IN HIS OFFICIAL AND INDIVIDUAL CAPACITY;**<br><br>**And DOES 1-25,**<br><br>        **Defendants.** | No.   C 08-02582 VRW<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS [FRCP 12(b)(6)]; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:  December 11, 2008<br>Time: 2:30 p.m.<br>Courtroom: 6<br>Judge: Chief Judge Vaughn R. Walker |

TO PLAINTIFF AND HIS ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on December 11, 2008 at 2:30 p.m., or as soon

thereafter as the matter may be heard in the above-entitled court, located at 450 Golden

Gate Avenue San Francisco, California 94102, defendants Windsor Fire Protection District

Board of Directors; Ronald Collier; Matt Gustafson; and Joe Giordani will move the court

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
- 1 -

the court to dismiss the action pursuant to FRCP 12 (b) (6) because plaintiff's complaint fails to state a claim upon which relief can be granted, because when the allegations in the complaint are applied to settled law, the only viable cause of action is for breach of contract, and that action must be limited to plaintiff and his employer, defendant Windsor Fire Protection District Board of Directors.

The motion will be based on this Notice of Motion, the Motion and Memorandum of Points and Authorities filed herewith, and the pleadings and papers filed herein.

DATED: September 2, 2008          MAYALL, HURLEY, KNUTSEN, SMITH & GREEN

By_____
                              WILLIAM J. GORHAM III,
                              ATTORNEYS FOR DEFENDANTS

## **TABLE OF CONTENTS**

I. INTRODUCTION.................................................................................................... 3

II. FACTS................................................................................................................... 3

III. ARGUMENT. ...................................................................................................... 6

    A. Plaintiff's First Cause Of Action Fails Because He Has Had All Process Due. ........... 6

    B. Plaintiff's Second Cause of Action Fails Because The Process He Received Is Not "Conscience-Shocking." ................................................................................ 10

    C. Plaintiff's Third Cause of Action Fails Because Substantive Due Process Can Not Be Violated For Want Of Training Or Supervision. ......................................... 11

    D. Plaintiff's Fourth Cause Of Action Fails Because His Allegations Establish Plaintiff Was Not Terminated For Exercising His First Amendment Rights. ........................... 12

    E. Plaintiff's Fifth Cause Of Action Fails Because A Rational Basis Supports His Termination. .................................................................................................... 13

    F. Plaintiff's Sixth Cause of Action Fails Because Damages Are Not Recoverable Under California Law. ............................................................................................. 14

    G. Plaintiff's Seventh Cause of Action For Violation of Article 1 § 7 Is Not Recognized Under California Law. ......................................................................... 15

    H. Plaintiff's Eighth Cause of Action Fails For Want Of A Privacy Interest. ................... 15

    I. The Ninth Cause of Action Can Only Be Against Contracting Parties. ........................ 17

    J. The Tenth Cause of Action Is Not Recognized Under California Law......................... 17

    K. Plaintiff's Eleventh Cause of Action Fails Because He Cannot Establish He Was Terminated For Exercising Protected Rights. .............................................................. 18

    L. Plaintiff's Twelfth Cause of Action For IIED Is Barred By The Exclusive Remedies of The California Workers' Compensation System. ..................................... 19

    M. Qualified Immunity Defeats All 42 U.S.C. 1983 Claims Against Individual Defendants. ........................................................................................................... 20

IV. CONCLUSION................................................................................................... 21

i

**Cases**

*Anderson v. Creighton*, 438 U.S. 635, 639 (1987)...................................................... 21

*Armendariz v. Penman*, 75 F.3d 1311, 1318-1319 (9th Cir. 1996)(*en banc*) ................. 11

*Arnett v. Kennedy*, 416 U.S. 134, at 264-265 (1974) ................................................... 7

*Board of Regents v. Roth*, 408 U.S. 564, 576-577 (1972)............................................ 10

*Carlsbad Aquafarm, Inc. v. State Dept. of Health Services*, 83 Cal.App.4th 809 (2000)... 14

*Chavez v. Martinez*, 538 U.S. 760, 774-776 (2003)..................................................... 10

*Chrisman v. City of Los Angeles*, 155 Cal.App.4th 29 (2007)......................................... 8

*Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-755 (9th Cir. 1994) ....................... 12

*Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 542-543 (1985) .......... 6, 7, 10

*Cole v. Fair Oaks Fire Protection Dist.*, 43 Cal.3d 148, 160 (1987) ............................... 19

*Cooper v. Dupnik* 963 F.2d 1220, 1229 (9th Cir. 1992)(*en banc*)................................. 11

*County of Sacramento v. Lewis*, 523 U.S. 833, 849 (1998) ......................................... 10

*Degrassi v. Cook*, 29 Cal.4th 333 (2002) .................................................................. 15

*Ferm v. U.S. Trustee*, 194 F.3d 954 (9th Cir. 1999) ............................................. 13, 14

*Foley v. Interactive Data Corp.*, 47 Cal.3d 654, 668, 699-700 (1988)...................... 17, 18

*Gantt v. Sentry Ins.*, 1 Cal.4th 1083, 1090 (1992) ..................................................... 18

*Gilbert v. City of Sunnyvale*, 130 Cal.App.4th 1264, 1278 (2005) ................................. 7

*Green v. Ralee Eng. Co.*, 19 Cal.4th 66, 79 (1998) .................................................... 18

*Guz v. Bechtel National, Inc.*, 24 Cal.4th 317, 352 (2000) .......................................... 18

*Harlow v. Fitzgerald*, 457 U.S. 800 (1982) ......................................................... 20, 21

*Hill v. N.C.A.A.*, 7 Cal.4th 1, 35-37 (1994)......................................................... 15, 16

*Katzberg v. Regents of University of California*, 29 Cal.4th 300 (2002)...................... 14, 15

*Livitsanos v. Sup. Ct.*, 2 Cal.4th 744, 756 (1992) ..................................................... 19

*Matthews v. Eldridge*, 424 U.S. 319, (1976)............................................................... 6

*Moore v. East Cleveland*, 431 U.S. 494, 502 (1977) ................................................... 12

*Mt. Healthy City School Dist. v. Doyle*, 429 U.S. 274 (1977) ....................................... 13

*Palko* v. *Connecticut*, 302 U.S. 319, 325-326 (1937) ........................................................ 12

*Rochin* v. *Calfornia*, 342 U.S. 165 (1953) ..................................................................... 11

*Shoemaker* v. *Meyers*, 52 Cal.3d 1, 25 (1990) .............................................................. 19

*Skelly* v. *State Personnel Bd*,. 15 Cal.3d 194 (1975).................................. 4, 5, 6, 7, 8, 9, 10

*Turner* v. *Anheuser-Busch, Inc.*, 7 Cal.4[th] 1238, 1258-1259 (1994) ........................... 18, 19

*Washington* v. *Glucksberg*, 521 U.S. 702, 703 (1997)...................................................... 12

*Williamson* v. *Lee Optical*, 348 U.S. 483, 488 (1955) ................................................. 13, 14

**Statutes**

2d Torts § 652D ...................................................................................................... 16

42 United States Code § 1983 ................................................................... 3, 7, 15, 20, 21

California Code of Civil Procedure § 1085 ............................................................... 9

California Labor Code § 3602 .............................................................................. 19

**Other Authorities**

California Constitution Article 1 § 1.............................................................. 16, 21

California Constitution Article 1 § 2.................................................................... 15

California Constitution Article 1 § 7.............................................................. 3, 14, 15

# I. **INTRODUCTION**

Plaintiff was terminated for punching a fellow firefighter during a drunken melee. He had numerous layers of review of his termination which provided him a full opportunity to be heard. He availed himself on this process with the assistance of his legal counsel. When his termination was confirmed, he filed this 42 U.S.C 1983 action claiming that his termination somehow violated his constitutional rights.

As will appear, plaintiff's 42 U.S.C. 1983 claims fail because plaintiff confuses the process he was due (and received) with the result he wants. Further, several alleged causes of action are not recognized as a matter of law such as actions for damages under Article 1 Section 7 of the California Constitution, breach of the implied covenant, and intentional infliction of emotional distress. The remaining claims are clearly defeated by the allegations in the first amended complaint (hereafter "complaint") with the exception of his claim for breach of contract, and even that claim sues defendants who are not parties to the contract. When the law is applied to the well pled facts, every cause of action except the breach of contract claim (Ninth Cause of Action) should be dismissed, and that claim should be limited to plaintiff's former employer, defendant Windsor Fire Protection District.

# II. **FACTS.**

Plaintiff Troy Collier, then a captain with Windsor Fire Protection District ("Windsor FPD"), began drinking on February 24, 2007 at 1:00 p.m. in preparation for the Windsor Volunteer Firefighters Association Awards Dinner held later that evening.

[Complaint, ¶¶ 1, 30, 35 & 36.]    After the awards dinner, plaintiff and several other "drunken revelers" left in a limousine arranged for by plaintiff.    [Complaint ¶¶ 1, 46, & 47.]    Plaintiff was "severely intoxicated."    [Complaint ¶¶ 76, 77, & 85.]    Plaintiff placed his arm around fellow captain Ron Busch's wife, Donna Busch, during the limousine ride.    [Complaint ¶¶ 1 & 65.]    An altercation inside of the limousine ensued between plaintiff and Ron Busch.    [Complaint ¶¶ 1, 68, 69, 70, 71, 72.]

After the altercation inside of the limousine, the driver pulled it over in a parking lot and plaintiff "confronted" Ron Busch outside of the limousine.    [Complaint ¶¶ 73, & 76.]    Plaintiff "does not recall" what happened after he was allegedly spit on by Ron Busch.    [Complaint ¶ 87.] The incidents between plaintiff and Ron Busch were investigated by the Windsor Police Department and Windsor FPD.    [Complaint Exhibits 2, 3, 7, & 8.]    Windsor FPD hired the law firm of Merrill, Arnone & Jones, who hired Investigator Gary Barner who, in turn, interviewed 14 witnesses and prepared a report provided to defendant Windsor FPD. [Complaint ¶¶ 117-119, 133-135, Exhibits 3, 4 & 7.]

Upon completing its investigation, Windsor FPD notified plaintiff on March 15, 2007, that it intended to terminate him for his role in the incidents that occurred on February 24, 2007.    [Complaint ¶¶ 114-117, Exhibit 4.]    Plaintiff was notified of his right to a *Skelly* hearing.    [*Id.*]    Plaintiff exercised his right to a *Skelly* hearing which was held on March 22, 2007.    [Complaint ¶ 123.]    Plaintiff submitted evidence and argument at the *Skelly* hearing.    [Complaint ¶¶ 126-128.]

Following the *Skelly* hearing, Windsor FPD terminated plaintiff.    [Complaint ¶ 140.]

140.] Plaintiff contends that Windsor FPD violated his due process rights because in addition to the matters set forth in the Notice of Intended Discipline, his termination was based on his "past performance problems relating to people skills." [Complaint ¶¶ 141-147.] Plaintiff challenged his termination, including this alleged deprivation of his due process through two of the four steps of Windsor FPD's internal grievance procedure set forth in the Memorandum of Understanding ("MOU") entered into between Windsor FPD and the Windsor Professional Firefighters Association/IAFF Union Local 4407. [Complaint ¶¶ 4, 151-153, 178, 191; Exhibit 6, pages 6-7 & Exhibit 1.]

Pursuant to the grievance procedure, plaintiff appealed his termination with defendant Windsor FPD Board of Directors. [Complaint ¶ 153.] After a hearing on May 16, 2007, defendant Windsor FPD Board of Directors sustained the termination. [Complaint ¶ 154.]

The final step of the grievance procedures involved a non-binding arbitration hearing. [Complaint ¶ 157.] The arbitrator was jointly selected by plaintiff and Windsor FPD. [Complaint ¶ 27.] The arbitration involved briefing of issues and two days of evidence. [Complaint ¶ 26, 28, & 157.] Plaintiff was represented by legal counsel. [Complaint ¶ 163.] Plaintiff argued that his termination was invalid because, among other reasons, his *Skelly* hearing did not afford him the opportunity to contest all the reasons for his termination. [Complaint Exhibit 6.] Following the arbitration, the arbitrator issued an advisory decision on April 7, 2008. [Complaint ¶ 29, & Exhibit 6.] Plaintiff's job was not reinstated and this law suit followed.

# III. ARGUMENT.

## A.    Plaintiff's First Cause Of Action Fails Because He Has Had All Process Due.

The Due Process Clause of the Fifth and Fourteenth Amendments do not protect against the deprivation of a property interest; they only require that constitutionally adequate procedural safeguards are in place before such deprivation occurs. [*Matthews v. Eldridge,* 424 U.S. 319, (1976).]   The process due involves a balancing of the private interest in retaining employment, the governmental interest in the expeditious removal of unsatisfactory employees and the avoidance of administrative burdens, and the risk of an erroneous termination. [*Cleveland Board of Education v. Loudermill,* 470 U.S. 532, 542-543 (1985).]   Notice and the opportunity to be heard are the hallmarks of adequate procedure. [*Loudermill, supra, at 542.*]

In California, public employers more than meet requirements of the Due Process Clause of the Fifth and Fourteenth Amendments for employees facing termination through *Skelly* hearings.   In *Skelly v. State Personnel Bd.* 15 Cal.3d 194 (1975), the California Supreme Court held that basic due process necessary to protect property interests from unconstitutional deprivation required "notice of the proposed action, the reasons therefor, a copy of the charges and materials upon which the action is based, and the right to respond, either orally or in writing, to the authority initially imposing discipline." (*Id* at 215.)Plaintiff admits that he received notice that he faced termination.  [Complaint ¶¶ 114-117, Exhibit 4; & ¶ 123.]

Plaintiff admits that a *Skelly* hearing was held during which he submitted evidence and argument. [Complaint ¶¶ 123, 126-128.] In fact, plaintiff contends that he submitted "an extensive brief on the February 24, 2007 incident." [Complaint ¶ 123.] This process more than satisfied plaintiff's federal due process rights which plaintiff appears to misapprehend as coextensive with any rights available under the California Constitution or under his employment contract.

Beyond this *Skelly* hearing, as said, plaintiff was afforded and exercised the right to appeal under the MOU. Through legal counsel plaintiff challenged his proposed dismissal and appealed the same through the presentation of evidence and briefing. The hearing officers were Battalion Chiefs of the department, and the Board heard his appeal. This process stands little chance for error, and allowed plaintiff notice and the opportunity to be heard which is all the process plaintiff was owed. [*Loudermill,* at pp. 542-543.]

Plaintiff raises a number of claims of alleged technical defects in his *Skelly* process and under the MOU. These claims, even if true, do not implicate a federal claim under 42 U.S.C. 1983, which rights are evaluated under the U.S. Constitution (e.g., *Loudermill),* not state law regarding the scope of *Skelly*. At the risk of being too thorough, these technical *Skelly* allegations will be addressed below.

Plaintiff claims that he did not have full access to all investigatory materials before the *Skelly* hearing. [Complaint ¶ 200.] There is no such legal requirement. The law only requires that an employee be made aware of the substance of the materials upon which the government is relying. [*Arnett v. Kennedy* (1974) 416 U.S. 134, at 264-265; *Gilbert v. City*

1  *City of Sunnyvale* 130 Cal.App.4[th] 1264, 1278 (2005).]  Plaintiff admits this burden was

2  met because he was provided an investigative summary report prior to the *Skelly* hearing.

3  [Complaint ¶ 136.]

4      Plaintiff further contends that he somehow was deprived of his rights due to the role

5

6  of legal counsel William Arnone, Esq. Plaintiff claims that lingering animosity between

7  Mr. Arnone and plaintiff due to prior adversarial roles they had in union negotiations with

8  Windsor FPD created an impermissible conflict of interest.  [Complaint ¶¶ 201-206.]  This

9
   allegation is more absurd than it is wildly speculative.  Even if it were not, plaintiff cannot
10

11  raise this complaint *after his Skelly hearing*.  Windsor FPD gave plaintiff actual notice that

12  Mr. Arnone, its attorney, was going to be involved in the investigatory process in a letter

13
    dated February 28, 2007.  [Complaint Exhibit 3.]  If plaintiff believed anything unfair
14

15  about that, it was incumbent upon him to raise this issue before or at least during his *Skelly*

16  hearing.  In *Chrisman v. City of Los Angeles*, 155 Cal.App.4th 29 (2007), the court held

17  that the failure of an employee to raise a conflict of interest by the time of a *Skelly* hearing

18
    constitutes a waiver of any right to raise it after the fact.  [*Id.* at 41-42.]  Obviously, if the
19

20  law were otherwise, employees would be able to remain quiet about an alleged conflict

21  only to raise it if they did not agree with the hearing officer's decision.

22

23

24      Finally, plaintiff claims that he was deprived of due process because the Notice of

25  Intended Discipline (Exhibit 4) is not verbatim with the post *Skelly* hearing Notice of

26  Termination (Exhibit 5.)  This too is a hollow claim.  Plaintiff faced termination as an

27

28

immediate and direct consequence of the drunken altercations he was involved in on February 24, 2007, not an ancient union negotiation or any other issue. The Notice of Intended Discipline makes this clear. [Complaint Exhibit 4.] If he had any mitigating circumstances that he wished to present, he had the opportunity to do so. Notwithstanding his presentation of briefing, evidence and argument, he lost his job. After the *Skelly* hearing, plaintiff had two more opportunities to do so when he presented his case to the board and to the advisory arbitrator. [Complaint ¶¶ 153-154 & 157.] The arbitrator's advisory opinion reveals that plaintiff did present evidence regarding his complaint of this alleged discrepancy. [Complaint Exhibit 6.] Nevertheless, his job was not restored. In other words, the Windsor FPD Board, which is the agreed upon final decision maker agreed upon by plaintiff in the MOU (Complaint Exhibit 1 p. 22), concluded that his actions merited his termination notwithstanding the arbitrator's advisory opinion to the contrary.

In addition to these many opportunities to be heard, plaintiff also had clear rights to challenge his termination or the propriety of his *Skelly* hearing. California Code of Civil Procedure § 1085 authorizes a petition for mandate to require any "inferior tribunal, corporation, board, or person to compel the performance of an act which the law specifically enjoins, as a duty." Consequently, if plaintiff actually believed any procedural right he was entitled to was denied and that the denial cost him his job, he could have brought an appropriate writ proceeding to enforce his rights.

In the end, it is clear that the process plaintiff was afforded, and the process he

1   elected not to pursue, provided him notice, the opportunity to be heard and were procedures

2   which involved little risk of error. This is more process than due to plaintiff under the U.S.

3   Constitution and his First Cause of Action fails as a matter of law.

4

5   **B.    Plaintiff's Second Cause of Action Fails Because The Process He Received Is
       Not "Conscience-Shocking."**

6        Plaintiff's second cause of action purports to allege a violation of his substantive

7   due process rights. The predicate to a viable substantive due process claim is the

8   infringement of a fundamental right that cannot be abridged absent a compelling state

9

10  interest, or conscience shocking governmental action that is unjustifiable by government

11  interests.  [*Chavez v. Martinez* 538 U.S. 760, 774-776 (2003); *County of Sacramento v.*

12  *Lewis*, 523 U.S. 833, 849 (1998).]  Neither predicate exists here and the second cause of

13  action fails.

14

15       First, entitlement to continued public employment clearly is not a fundamental right.

16  Proprietary rights in one's job are based on a legitimate claim of entitlement which, in turn,

17  is grounded in state law, not the constitution.  [*Board of Regents v. Roth* 408 U.S. 564, 576-

18  577 (1972).]  Additionally, termination does not require a compelling state interest as

19

20  vested employees can lose their jobs if procedural due process is afforded.  [*Loudermill* at

21  pp. 542-543.]

22

23       Nor does plaintiff have a colorable claim that his termination for drunken brawling

24  "shocks the conscience."  Plaintiff received all constitutional process due to him (*supra* at

25  III.A.)  His claims boil down to technical arguments why, he believes, he received an

26  imperfect *Skelly* process and he has consequently suffered economic loss.  Even if these

27

28

alleged technical defects occurred, they do not and cannot equate to "conscience-shocking" government action.

Conscience-shocking government conduct usually involves physical or psychological abuse. [*See, e.g., Rochin v. Calforina* 342 U.S. 165 (1953) (stomach pumped to obtain evidence forcing self-incrimination); *and, Cooper v. Dupnik* 963 F.2d 1220, 1229 (9th Cir. 1992)(*en banc*)(psychological interrogation techniques).] It is also clear that courts are not inclined to expand substantive due process into economic claims. In *Armendariz v. Penman*, 75 F.3d 1311, 1318-1319 (9th Cir. 1996)(*en banc*), the Ninth Circuit advised that "the use of substantive due process to extend constitutional protection to economic and property rights has been largely discredited." The Ninth Circuit explained that substantive due process has retracted away from economic claims and is limited to fundamental rights. [*Id.*] Plaintiff's hyper-technical due process arguments simply are not in the same universe as "conscience-shocking" government conduct.

## C. Plaintiff's Third Cause of Action Fails Because Substantive Due Process Can Not Be Violated For Want Of Training Or Supervision.

Plaintiff asserts that defendant Chief Ronald Collier violated his substantive due process rights by not properly training or supervising the battalion chiefs and defendants Matt Gustafson and Joe Giordani. Illustrative of this allegation, plaintiff complains that neither possessed "even a basic four year undergraduate college degrees." [Complaint ¶ 228.] This claim fails as a matter of law because it does not involve government infringement of a fundamental right or conscience-shocking governmental conduct which are legal requirements for any substantive due process claim (*supra* at III.B.)

Fundamental rights must be "deeply rooted in this Nation's history and tradition" and "implicit in the concept of ordered liberty," such that "neither liberty nor justice would exist if they were sacrificed." [*Washington v. Glucksberg*, 521 U.S. 702, 703 (1997), *quoting from Moore v. East Cleveland*, 431 U.S. 494, 502 (1977) (plurality opinion) *and Palko* v. *Connecticut*, 302 U.S. 319, 325-326 (1937).] It should go without saying that these high standards do not include plaintiff's claim that he had the right to have college educated hearing officers.

It likewise strains credulity to equate defendant Chief Ron Collier's alleged failure to train or supervise personnel with "conscience-shocking" governmental conduct. As said, this standard typically requires abuse or oppression, not omission (*supra* at III.B.)

**D.    Plaintiff's Fourth Cause Of Action Fails Because His Allegations Establish Plaintiff Was Not Terminated For Exercising His First Amendment Rights.**

The court is not bound to accept conclusory allegations as true, only well pled facts. [*Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-755 (9th Cir. 1994).] The application of this principle defeats plaintiff's Fourth Cause of Action because the factual allegations in his complaint make clear that the occasion for his termination had nothing to do with union activities some three years earlier in 2004. In this connection, the incident in question is February 24, 2007, while the "pre-incident animosity occurred on or about June or July, 2004." [Complaint ¶¶ 1 & 182.] Nothing in the complaint indicates that defendants, or any of them, took any action against plaintiff in alleged retaliation for the exercise the union activities from June or July, 2004 until the drunken altercation in February 24, 2007. [Complaint ¶¶ 1 to 301.] The complaint includes hundreds of

allegations, and numerous exhibits, none of which show any nexus between plaintiff's union activities in 2004 and the fight and subsequent termination in 2007. [*Id.* and Exhibits 1 to 8.]

This apparent lack of causal connection is fatal. In *Mt. Healthy City School Dist. v. Doyle*, 429 U.S. 274 (1977), the Supreme Court held that even a termination based in part on the exercise of First Amendment expression can be upheld if the termination would have happened without consideration of the protected conduct. *Doyle* involved the termination of an untenured teacher for lack of professionalism, making obscene gestures, and for statements made on a radio program about school policies. [*Id.* at 282-283, note 1.] Although the high court upheld that the latter conduct was an impermissible basis for termination of untenured teacher, the question remained whether he would have been terminated anyway.

In this case, there is no causal connection. Other than supposition, there is nothing that factually ties the termination of plaintiff with the alleged ill-will 3 years earlier. Even giving plaintiff the benefit of any reasonable inference from his allegations, his conclusion that he was fired because of prior union activities is unsustainable.

**E.      Plaintiff's Fifth Cause Of Action Fails Because A Rational Basis Supports His Termination.**

Plaintiff claims that his termination has deprived him his protected liberty interest of being a firefighter. In *Ferm v. U.S. Trustee*, 194 F.3d 954 (9th Cir. 1999), the Ninth Circuit held that a rational basis test is the standard for testing economic based liberty interests such as pursuing one's occupation:

> "While the pursuit of a profession has been recognized as a protected liberty interest, in the post-Lochner era a restriction on the conduct of a profession will run afoul of substantive due process rights only if it is irrational. See *Williamson v. Lee Optical*, 348 U.S. 483, 488 (1955)." [*Ferm* at p. 961.]

The complaint and exhibits relied upon by plaintiff easily meet the rational basis standard. Plaintiff placed his arm around fellow captain Ron Busch's wife and then was involved in a physical altercation inside and outside of the limousine with Ron Busch. [Complaint ¶¶ 1, 65, 68, 69, 70, 71, 72, 73 & 76.] He faced termination for this conduct and, after hearings and the opportunity to be heard, he lost his job. No fair minded trier of fact could find that no rational basis existed for the termination of plaintiff. His Fifth Cause of Action therefore fails as a matter of law.

**F.    Plaintiff's Sixth Cause of Action Fails Because Damages Are Not Recoverable Under California Law.**

Plaintiff's Sixth Cause of Action purports to state a due process violation under Article I Section 7 of the California Constitution. As a matter of law, plaintiff cannot seek tort damages for this alleged violation. In *Katzberg v. Regents of University of California*, 29 Cal.4th 300 (2002), the California Supreme Court held that no action for damages can be maintained for an alleged violation of Article I Section 7 of the California Constitution. Although *Katzberg* involved an alleged liberty interest, rather than a proprietary interest, there is no reason to believe the court's conclusion that no private right of action exists would have been any different since both interests are protected under Article 1 Section 7. In fact, the *Katzberg* court cited with approval the court of appeal holding and analysis in *Carlsbad Aquafarm, Inc. v. State Dept. of Health Services*, 83 Cal.App.4th 809 (2000)

where it was held that no private action for damages exists for an alleged proprietary deprivation without process under Article 1, Section 7.

Because no private action for damages exists under Article 1 Section 7 of the California Constitution, plaintiff's Sixth Cause of Action fails as a matter of law.

## G. Plaintiff's Seventh Cause of Action For Violation of Article 1 § 7 Is Not Recognized Under California Law.

Plaintiff's Seventh Cause of Action purports to state a claim that his termination violated his right to free speech under Article 1 § 2 of the California Constitution. In *Degrassi v. Cook*, 29 Cal.4th 333 (2002), which the California Supreme Court ordered to be published as companion to *Katzberg, supra*, California's high court held that no private action for an alleged violation of Article 1 Section 7 (protecting speech) could be maintained. While the court did leave open the possibility of other circumstances creating recognition of action for damages, this is not the case for such recognition.

Plaintiff believes that some three years after engaging in union negotiations (protected speech), he was terminated. For the same reasons plaintiff has no viable First Amendment claim under 42 U.S.C. 1983 (above at III.D.), plaintiff has not and can not link the loss of his job to his participation in union negotiations.

## H. Plaintiff's Eighth Cause of Action Fails For Want Of A Privacy Interest.

In California, plaintiffs claiming a constitutional violation of privacy rights must establish: 1) a legally protected privacy interest, 2) a reasonable expectation of privacy; and, 3) a serious invasion of the privacy interest. [*Hill v. N.C.A.A.*, 7 Cal.4th 1, 35-37 (1994).] Plaintiff's complaint makes clear that he had no reasonable expectation of privacy

privacy in the events of February 24, 2007.

A reasonable expectation of privacy is "an objective entitlement founded on broadly and widely accepted community norms." [*Hill* at p. 37, *citing Restatement 2d Torts § 652D*.] In other words, plaintiff's subjective expectations are not material. Plaintiff's altercations in and out of the limousine were public acts. Plaintiff admits that the altercations occurred in the presence of several persons who were not employed by Windsor FPD. [Complaint ¶¶ 51 & 90 (several "girlfriends" were present as well as "professional acquaintances".] The altercations were investigated by the police. [Complaint ¶¶ 88 – 112.] In addition to being a fire captain, plaintiff is the son of defendant Fire Chief Ron Collier. [Complaint ¶ 13.] These factors, the public employment status (captain), familial relationship to the chief (son), and the public nature of the altercations, all made for public interest and newsworthiness in the small community of Windsor.

In addition, public trust is critical for fire departments. As in any trust relationship, open communication is imperative. For matters of public interest such as this altercation, there can be no reasonable expectation of silence. Simply put, high ranking public employees cannot engage in "drunken reveling," "confront" other high ranking officials which results in physical "altercations" and expect that the disposition of such matters by the responsible public entity will be cloaked in silence.

It is submitted that the plaintiff's allegations in his complaint establish that he could have had no reasonable expectation of privacy giving rise to a claim under Article 1

Section 1 of the California Constitution.

I.    **The Ninth Cause of Action Can Only Be Against Contracting Parties.**

Plaintiff overreaches in his Ninth Cause of Action because he claims that all defendants, many of whom are not parties to the MOU, breached it to his detriment. Exhibit 1 to the complaint is a copy of the MOU upon which the Ninth Cause of Action is based. [Complaint ¶ 4, Exhibit 1.] The terms of the MOU make clear that the parties are the Windsor Fire Protection District "EMPLOYER" on one hand, and the captains and engineer/firefighters "EMPLOYEES" on the other. [*Id.* at p. 4.] Defendants Ronald Collier, Matt Gustafson, and Joe Giordani are not parties to the MOU and the Ninth Cause of Action should be dismissed as to these defendants.

J.    **The Tenth Cause of Action Is Not Recognized Under California Law.**

Plaintiff's Tenth Cause of Action seeks damages sounding in tort for a claimed breach of the implied covenant of good fair dealing. [Complaint ¶ 294.] California law clearly provides that breach of the implied covenant actions based on employment contracts do not give rise to tort damages. [*Foley v. Interactive Data Corp.*, 47 Cal.3d 654, 699-700 (1988).]

Nor is breach of the implied covenant viable where the allegations add nothing to a breach of contract action:

> A breach of the contract may also constitute a breach of the implied covenant of good faith and fair dealing. But insofar as the employer's acts are directly actionable as a breach of an implied-in-fact contract term, a claim that merely realleges that breach as a violation of the covenant of good faith and fair

fair dealing is superfluous. [*Guz v. Bechtel National, Inc.*, 24 Cal.4th 317, 352 (2000).]

Here, plaintiff's breach of the implied covenant claim is a superfluous restatement of his breach of contract claim. In fact, his breach of the implied covenant "fully incorporates" all prior paragraphs of the complaint. [Complaint ¶ 289.]

Under *Foley* plaintiff's Tenth Cause of Action fails in tort, and under *Guz*, it fails in contract. The Court should therefore dismiss plaintiff's Tenth Cause of Action for breach of the implied covenant of good faith and fair dealing.

**K.    Plaintiff's Eleventh Cause of Action Fails Because He Cannot Establish He Was Terminated For Exercising Protected Rights.**

Plaintiff's Eleventh Cause of Action purports to state a claim that he was terminated in violation of public policy. California has recognized a four factor test for evaluating whether a protected public policy interest is in play. The policy must be:

1. Based on either a constitutional or statutory provision [*Green v. Ralee Eng. Co.*, 19 Cal.4th 66, 79 (1998)];

2. Inure to the benefit of the public [*Foley supra* at 669-670];

3. Well established at the time of the discharge [*Foley supra* at 668]; and,

4. Substantial and fundamental [*Gantt v. Sentry Ins.*, 1 Cal.4th 1083, 1090 (1992)].

In addition, California requires a causal nexus between the adverse employment action and the exercise of protected activity. Thus, in *Turner v. Anheuser-Busch, Inc.*, 7 Cal.4th 1238, 1258-1259 (1994), the court rejected as a matter of law a claim of retaliation for whistleblowing where poor performance evaluations occurred four years after the protected

protected conduct.

Plaintiff likewise cannot link his union participation (which is his only allegedly protected activity before his termination).  Like the plaintiff in *Turner*, plaintiff Collier's union participation was years prior to his termination.  More important than the mere passage of nearly three years time, plaintiff cannot possibly make the required showing of nexus because his complaint admits his involvement in the drunken altercations directly leading to his termination. [Complaint ¶¶ 1, 65, 68, 69, 70, 71, 72, 73 & 76.]  For this reason, plaintiff's Eleventh Cause of Action fails as a matter of law.

**L.    Plaintiff's Twelfth Cause of Action For IIED Is Barred By The Exclusive Remedies of The California Workers' Compensation System.**

Actions for intentional infliction of emotional distress (IIED) which arise out of the employment relationship are barred by the exclusive remedy of the California Workers' Compensation System **unless** the termination is the product of wrongful discrimination or in violation of public policy.  [*California Labor Code § 3602*; *Shoemaker v. Meyers*, 52 Cal.3d 1, 25 (1990); *Livitsanos v. Sup. Ct.*, 2 Cal.4th 744, 756 (1992).]  The rationale for this rule is that termination is "a normal part of the employment relationship."  [*Cole v. Fair Oaks Fire Protection Dist.*, 43 Cal.3d 148, 160 (1987).]  On the other hand, unlawful discrimination or termination in violation of public policy "exceed(s) the normal risks of the employment relationship."  [*Livitsanos* at p. 756.]  Application of this rule of law defeats plaintiff's IIED claim.

As said, plaintiff's claims that his termination was in violation of his exercise of his free speech are defeated by the allegations in his complaint. [*Supra* at III.D., III.G, & III.I.]

III.I.]  Because plaintiff cannot establish that he was terminated due to the exercise of his free speech rights, his claim for IIED fall within, and is in this case, barred by the exclusive remedies under the workers' compensation law.

## M.    Qualified Immunity Defeats All 42 U.S.C. 1983 Claims Against Individual Defendants.

It is submitted for above reasons (supra at III.A., III.B., III.C., III.D., & III.E.) that none of plaintiff's 42 U.S.C. 1983 claims have merit.  However, in the event any of those claims survive this attack, the individual defendants are immune from liability. The doctrine of qualified immunity protects government officials from claims for damages arising from the exercise of their discretionary duties.  [*Harlow v. Fitzgerald*, 457 U.S. 800 (1982).]  The immunity extends to the point that "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  [*Id.* at p. 818.]

Under this standard, it is not enough to enunciate generalities such as plaintiff had Due Process rights that a reasonable person should have known to exist:

> [I]f the test of "clearly established law" were to be applied at this level of generality, it would bear no relationship to the "objective legal reasonableness" that is the touchstone of *Harlow* . . . . It should not be surprising, therefore, that our cases establish that the right the official is alleged to have violated must have been "clearly established" in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in light of preexisting law the unlawfulness must be apparent.

1    [*Anderson v. Creighton*, 438 U.S. 635, 639 (1987).]

2    The very face of the complaint establishes that plaintiff received both notice and the

3    opportunity to be heard, which are the hallmarks of Due Process.    [*Supra* at III.A.]

4    Plaintiff's alleged 42 U.S.C. 1983 claims hinge on hypertechnical defects which, even if

5    righteous, do not approach violations of "clearly established statutory or constitutional

6    rights of which a reasonable person would have known." [*Harlow* at p. 818.]

7    Consequently, to the extent any of plaintiff's 42 U.S.C. 1983 claims survive, the

8    individually named defendants are immune from liability and are entitled to dismissal of

9    the same.

10

11

12

13                                **IV. CONCLUSION.**

14    Plaintiff lost his job for his role in physical altercations with a fellow captain. When

15    conclusory allegations are, as they must be, ignored, plaintiff Collier's claim is a simple

16    breach of contract action under the MOU. Even that claim, however, asks too much and

17    must be limited to the plaintiff and his employer who are the only parties to the MOU.

18

19

20    All of the tort claims fail as a matter of law. Several alleged tort claims are not

21    cognizable under law (i.e. -- substantive due process, alleged violations of Article 1 Section

22    1 of the Cal. Const., IIED, and breach of the implied covenant). The other tort claims are

23    defeated by the factual allegations in the complaint which make clear that plaintiff received

24    the process he was due and that his prior union activities three years before the subject

25    physical altercations have not even an arguable connection to his termination.

26

27

28

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT                                    - 21 -

termination.

It is therefore submitted that plaintiff's complaint should be dismissed in its entirety with the exception of the Ninth Cause of Action for breach of contract, which should be limited to a claim against defendant Windsor Fire Protection District Board of Directors.


DATED: September 2, 2008    MAYALL, HURLEY, KNUTSEN, SMITH & GREEN

By_____
        WILLIAM J. GORHAM III,
        ATTORNEYS FOR DEFENDANTS